UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BASF CORPORATION                                           CIVIL ACTION

VERSUS                                                     NO. 13-42-JWD-RLB

MAN DIESEL & TURBO NORTH
AMERICA, INC.

## ORDER

Before the court is BASF Corporation's Motion for *In Camera* Inspection of Redacted Documents. (R. Doc. 55). Through the motion, BASF Corporation ("BASF") requested the court to conduct an *in camera* inspection of certain redacted documents produced by Man Diesel & Turbo North America, Inc. ("Man Diesel") and, after conducting such an inspection, to order production of those documents without redactions. Accordingly, BASF has moved the court to both (1) conduct an *in camera* inspection of certain redacted documents[1] and (2) issue an order compelling the production of those documents without redactions. Man Diesel opposes an order compelling the production of the documents to be submitted for *in camera* inspection to BASF without redactions. (R. Doc. 62).

I.  **Background**

The key dates leading up to this litigation are not disputed.[2] The underlying incident—the failure of BASF's C-300 Compressor allegedly as a result Man Diesel's faulty replacement

---

[1] The discovery at issue are responses to BASF's Request for Production No. 4, which seeks production of "any and all Documents evidencing communications or instructions between any employee(s) of BASF and MAN Diesel and/or among any employee(s) of BASF, MAN Diesel, Siemens Entergy, Inc. and/or Turner Industries which in any way relate to the C-300 after its Failure." (R. Doc. 55-5 at 5) (emphasis removed).

[2] For a more detailed description of the factual and procedural history of this case, see the court's prior order dated November 25, 2014. (R. Doc. 66).

of certain mechanical seals—occurred on December 30, 2011. (R. Doc. 62-2 at 1). On January 18, 2012, BASF placed Man Diesel on notice of a potential claim for the failure of the C-300 Compressor. (R. Doc. 62-2 at 1). On August 16, 2012 BASF provided Man Diesel with a draft copy of its Petition in an effort to reach a settlement agreement and possibly engage in mediation. (R. Doc. 55-5 at 135-37). On December 21, 2012, BASF initiated the instant litigation for breach of contract and negligence in state court and the action was subsequently removed on January 17, 2013. (R. Doc. 1).

After a period of discovery, BASF filed the instant motion on September 29, 2014. (R. Doc. 55). On November 25, 2014, the court granted the motion in part and required the submission of approximately 400 pages of documents for *in camera* inspection regarding documents redacted on the basis of attorney-client privilege, the work product doctrine, or both. (R. Doc. 66). On November 26, 2014, counsel for Man Diesel informed the court that Rafe Porrier, the individual believed to have served as "in-house counsel" for Man Diesel, "was a disbarred lawyer and thus not an attorney for the purposes of invoking the attorney-client privilege." (R Doc. 68 at 3). The court then held a status conference on December 1, 2014, in which the parties agreed that only 34 pages of documents, which Man Diesel asserts are protected pursuant to the work product doctrine, remain in dispute. (R. Doc. 68 at 1-2). On December 2, 2014, defense counsel provided the undersigned with "redacted" and "un-redacted" versions of 34 pages of emails for *in camera* inspection.[3] The parties have not provided the

---

[3] The documents provided are Bates numbered as follows: MAN DIESEL 874-877, 881-887, 912-916, 1728-1731, 1751-1753, 2143, 2213-2222. The following documents were provided to the court without redactions for both the submitted "unredacted" and "redacted" versions: MAN DIESEL 1731, 2143, and 2213-2222. To the extent Man Diesel has provided these documents to BASF in unredacted form, any work product protection is waived with regard to those documents. *See*, *infra*, n. 6. Man Diesel also submitted non-redacted versions of e-mails appearing on MAN DIESEL 886-887. Those e-mails involve communications with counsel for BASF and are not protected under the work product doctrine. It

court with any additional briefing on the application of the work product doctrine to the documents submitted for *in camera* inspection.

The following documents submitted for *in camera* inspection are attached to BASF's motion in "redacted" form: MAN DIESEL 874-877, 881-887, 912-916. (R. Doc. 59-5). The remaining documents submitted for *in camera* inspection are not attached to BASF's motion at all: MAN DIESEL 1728-1731, 1751-1753, 2143, 2213-2222.[4] Although BASF did not specifically seek to "compel" production of these documents through its filed motion, the court will consider whether to order those documents produced in light of the parties' agreement to submit them for *in camera* inspection.[5]

## II. Law and Analysis

The work product doctrine is a matter of federal procedural law in diversity cases. *See N. Am. Specialty Ins. Co. v. Iberville Coatings, Inc.*, No. 99–859, 2002 WL 34423316, at *3 (M.D. La. Mar. 22, 2002). The work-product doctrine is codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure. "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). The moving party may discover relevant information, however, if the "party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii).

---

appears that Man Diesel submitted those documents for *in camera* review solely to provide context for later emails between employees within Man Diesel.

[4] In a conference call on February 9, 2015, counsel for Man Diesel confirmed that these documents were produced in discovery in their redacted form. (R. Doc. 76).

[5] Also in the conference call on February 9, 2015, counsel for Man Diesel agreed to re-produce to BASF the specific 34 documents at issue in their redacted form.

3

The party asserting protection under the work product doctrine has the burden of proving that the documents were prepared in anticipation of litigation. *Lasalle Bank N.A. v. Mobile Hotel Props., LLC*, No. 03–2225, 2004 WL 1238024, at *2 (E.D. La. June 3, 2004). In the Fifth Circuit, while litigation need not necessarily be imminent, the primary motivating purpose behind the creation of the document must be to aid in possible future litigation. *United States v. Davis,* 636 F.3d 1028, 1040 (5th Cir. 1981). The "[f]actors that courts rely on to determine the primary motivation for the creation of a document include the retention of counsel and his involvement in the generation of the document and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance." *Gator Marshbuggy Excavator L.L. C. v. M/V Rambler*, No. 03–3220, 2004 WL 1822843, at *3 (E.D. La. Aug. 12, 2004). Although the involvement of an attorney is not dispositive, it is a "highly relevant factor ... making materials more likely to have been prepared in anticipation of litigation." *Carroll v. Praxair, Inc.*, No. 05–307, 2006 WL 1793656, at *2 (W.D. La. Jun. 28, 2006).

### A. Documents Produced in Full

Man Diesel has provided several documents for *in camera* review that are not redacted in either the "redacted" or "un-redacted" versions submitted to the court. These documents include MAN DIESEL 1731, 2143, and 2213-2222. As confirmed at a telephone conference held on February 9, 2015, Man Diesel is no longer claiming work product protection over these documents. Similarly, emails appearing on MAN DIESEL 886-887 involving counsel for BASF were submitted to the court without redactions in both the "redacted" and "un-redacted" versions. These documents are clearly not work product and have apparently been provided by

4

counsel for Man Diesel to provide context for later internal emails between Man Diesel employees.

The court need not order the foregoing documents and/or emails produced because they have already been provided to BASF.

### B. Documents with Duplicative Versions Already Produced in Full

Man Diesel has produced redacted documents labeled MAN DIESEL 884, 886, 915, 1730, and 1752. The substance of those emails, however, appear un-redacted as attachments to BASF's Motion to Compel. Simply put, the underlying e-mails have already been produced without redactions:

- MAN DIESEL 878 was produced to BASF in unredacted form. (R. Doc. 57-1 at 173; R. Doc. 59-5 at 126). This document contains the substance of the email redacted on MAN DIESEL 884, 915, and 1730.

- MAN DIESEL 813 and MAN DIESEL 894 were produced to BASF in unredacted form. (R. Doc. 57-1 at 173; R. Doc. 59-5 at 142). These documents contain the substance of the email redacted on MAN DIESEL 886.

- MAN DIESEL 848 was produced to BASF in unredacted form. (R. Doc. 57-1 at 166; R. Doc. 59-5 at 106). This document is an identical duplicate of the document labeled MAN DIESEL 1752.

As with the previous section, there is nothing for the court to order produced. BASF has these emails.

### C. Documents Produced only in Redacted Form

The remaining 16 documents (MAN DIESEL 874-877, 881-883, 885, 912-914, 916, 1728-1729, 1751, and 1753) are the only documents truly at issue. The Court's *in camera* review of the un-redacted versions of these documents reveals that they were all prepared after August 16, 2012, the date on which BASF sent notice to Man Diesel that it had drafted a petition

to potentially be filed in court. Accordingly, as far as the timing of the emails, there can be no dispute that they were made when litigation was more than a remote possibility.

The issue remains, however, whether the communications were specifically made to aid in litigation. None of the emails includes an individual identified as counsel for Man Diesel, though several of the emails reference that they were made at the direction of or for the benefit of counsel. Nonetheless, Man Diesel argues that the communications are protected pursuant to the attorney-work product doctrine because they were made in anticipation of litigation and for the benefit of outside counsel. (R. Doc. 62 at 9).[6]

Having reviewed the documents submitted for *in camera* inspection, the Court finds that they constitute protected work product. These contain emails made between August 22, 2012 and August 28, 2012 primarily involving executives of Man Diesel discussing their plans and strategies with regard to responding to the draft Petition and settlement demand letter sent by counsel for BASF, including preparation for settlement negotiations and potential mediation. Although Mr. Porrier is a disbarred attorney, he is acting as point person in these communications with opposing counsel for the benefit of Man Diesel's counsel. These communications are in the context of having received a draft petition from counsel for BASF as well as having received BASF's offer to pursue settlement of this dispute through alternative dispute resolution.

---

[6] Before representing that Rafe Porrier was a disbarred attorney, Man Diesel claimed that the emails submitted for review were protected by the work product doctrine because they were "created by MAN Diesel at the direction of Rafe Poirrer." (R. Doc. 62 at 9-10). Man Diesel also claimed that the documents "require heightened or special protection because they illustrate the mental impressions, interpretations, conclusions and opinions of . . . Rafe Poirrier." (R. Doc. 62 at 10). In light of Man Diesel's determination that Mr. Poirrier is not an "attorney" for the purpose of the attorney-client privilege, the court sees no basis for considering Mr. Poirrier an "attorney" for the purpose of the work product doctrine.

Based on the foregoing, Man Diesel has met its burden of proof as to the applicability of the work product privilege. The court concludes that the emails submitted are protected pursuant to the work product doctrine.[7]

The Court also concludes that BASF has not met its burden of proving that Man Diesel has waived the work product doctrine with regard to MAN DIESEL 874-877, 881-883, 885, 912-914, 916, 1728-1729, 1751, and 1753 in light of the productions discussed in Sections II.A and II.B above. To the extent Man Diesel has produced documents (or duplicative emails) to BASF that the court has considered during this *in camera* inspection, the work product doctrine shall be deemed waived with regard to those documents only. BASF has had the opportunity to raise specific arguments regarding subject matter waiver of the documents discussed in this Section, but has failed to do so.[8]

---

[7] Considering the substance of the emails, the court also concludes that BASF does not have any "substantial need" of these materials to prepare its case. They are of limited relevance to this litigation and do not directly address the underlying issue in this matter - the alleged failure of BASF's C-300 Compressor allegedly as a result Man Diesel's faulty replacement of certain mechanical seals.

[8] Without clarifying which documents had been previously produced, BASF argues that the work product doctrine has been waived pursuant to Louisiana law. (R. Doc. 55-1 at 9-11). BASF has the burden of proving waiver of work product immunity. *See Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 379 n.10 (5th Cir. 2010) ("The work product doctrine differs from the attorney-client privilege in that non-waiver need not be proven to invoke work product immunity.") (*citing Johnson v. Gmeinder,* 191 F.R.D. 638, 643 (D. Kan. 2000). BASF, which argues inapplicable standards and makes no effort to demonstrate to the court to what extent the work product doctrine should be deemed waived, has not met its burden of proving subject matter waiver. *See Varel v. Banc One Capital Partners, Inc*., No. 93-1614-, 1997 WL 86457, at *3 (N.D. Tex. Feb. 25, 1997) ("In light of the distinctive purpose underlying the work-product doctrine, a general subject-matter waiver of work-product immunity is warranted only when the facts relevant to a narrow issue are in dispute and have been disclosed in such a way that it would be unfair to deny the other party access to other facts relevant to the same subject matter."). To the extent any "waiver" of the work product doctrine occurred, the court will limit the waiver to the actual documents produced. *See S.E.C. v. Microtune, Inc.*, 258 F.R.D. 310, 319 n.4 (N.D. Tex. 2009) ("[T]he disclosure of work product to a third party waives protection only as to the materials actually disclosed."); *S.E.C. v. Brady*, 238 F.R.D. 429, 444-45 (N.D. Tex. 2006) (limiting waiver of the work product doctrine to the actual documents produced).

**III.     Conclusion**

**IT IS ORDERED** that BASF's Motion for *In Camera* Inspection of Redacted Documents (R. Doc. 55) is **DENIED** to the extent is seeks an order compelling the production of the unredacted versions of documents provided by Man Diesel for *in camera* inspection. Having previously granted BASF's Motion in part (R. Doc. 66), the parties shall bear their own costs in relation to the Motion.

Signed in Baton Rouge, Louisiana, on February 10, 2015.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**