UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **BASF CORPORATION** | **CIVIL ACTION** |
| **V.** | **NO. 13-42-JWD-RLB** |
| **MAN DIESEL & TURBO NORTH AMERICA, INC.** | **JUDGE JOHN W. deGRAVELLES** |

**RULING AND ORDER**

Before the Court is BASF Corporation's ("BASF") Motion for Summary Judgement on Spoliation of Evidence. BASF seeks to dismiss with prejudice MAN Diesel & Turbo America's ("MAN") counterclaim of intentional spoliation of evidence. (Doc. 102). MAN opposes the motion. (Doc. 107). BASF has replied to MAN's opposition. (Doc. 109). The Court has jurisdiction pursuant 28 U.S.C. § 1332.

After careful consideration of the law, facts, and the arguments brought forward by the parties, BASF's motion is denied. Construing the facts in a light most favorable to MAN, a reasonable jury could conclude that BASF intentionally spoliated evidence.

**I.    Background**

BASF owns and operates a chemical manufacturing facility located in Geismar, Louisiana. (Doc. 98 at 3). MAN preformed seal replacement work on the C-300 Compressor at this facility on December 28, 2011. (Doc. 107 at 1). The compressor was restarted two days later on December 30, 2011, and subsequently failed. (*Id.*). BASF alleges that MAN caused the failure and is liable for the damages that have occurred due to the non-operation of the Geismar facility. (Doc. 1-1 at 2–3). BASF claims damages of $270,212.76 per day for the period of December 30, 2011 to February 16, 2011, totaling $12.7 million. (Doc. 98 at 9–10).

MAN has counterclaimed that BASF is liable to MAN for the intentional spoliation of evidence under Louisiana law. (Doc. 26 at 1). Specifically, MAN alleges that BASF intentionally destroyed the post-failure evidence of the compressor in order to deprive MAN from inspecting it. (*Id.* at 2). MAN claims that BASF is therefore liable for damages of any economic harm caused by this spoliation. (*Id.* at 3). MAN also claims BASF must be subjected to "the most adverse of evidentiary presumptions." (*Id.* at 4).

### A.     Relevant Facts

On December 31, 2011, an email was sent by Kevin J. McCarroll, the Operations Director for the Geismar plant, to Thomas A. Yura, Joseph A Felsone, and David P. Mihalik, also of BASF,[1] discussing the severity of the damage to the compressor subsequent to its failure the Friday before. (Doc. 107-3 Ex. A at 1). At that time, the compressor was already under disassembly with the damage being described as "evident." (*Id.*). The email states that Aaron Rose[2] was already assisting with the process of investigating the failure and had preliminarily determined that a mechanical failure was the cause. (*Id.*). Although the email states the "root cause" had yet to be determined, it noted the appearance of loose bolts on the bearing end caps. (*Id.*). With discovery of these loose bolts in mind, Kevin contemplated liability for both MAN and Siemens, the Original Equipment Manufacturer, for the failure of the compressor. (*Id.*).

On January 1, 2012, at 12:02pm, Thomas A. Yura sent an email to Kevin J. McCarroll and Joseph Falsone asking for clarification on whether they would have to put Siemens and MAN on notice for possible liability. (Doc. 107-4 Ex. B at 1). At 1:27pm, Joseph sent an email

---

[1] Thomas A. Yura is the Senior Vice President and General Manager of BASF. (Doc. 107-8 Ex. F at 1). Joseph A. Falsone is the Procurement Hub Manager, NTP/G. (Doc. 107-5 Ex. C at 1). David P. Mihalik's position appears unclear from the record.

[2] Aaron Rose is BASF's Reliability Engineer. (Doc. 49-1 Ex. 2 at 1).

2

to Thomas stating his belief that since Siemens had been part of the investigation into the failure, BASF was "good" as far as notice went; but further inquiries would need to be made regarding putting MAN on notice, specifically whether either BASF or Siemens would have to put them on notice. (*Id.*). The email also requests information about the purchase order that was issued in order to determine who needed to put MAN on notice; information about the contractual relationship between Siemens and MAN was also requested. (*Id.*). In this same email, Joseph stated the possible need for a third party expert to act as a neutral observer. (*Id.*).

On January, 1 2012, at 6:04pm, an email was sent by Kevin McCarroll to Florian H. Geissier with Falsone, Yura, and Richard carbon copied. (Doc. 107-5 Ex. C at 1). The email confirmed the arrival of the damaged C-300 compressor at the Houston facility. (*Id.*). The possibility of liability for Siemens and MAN was again raised in this email, considering the extent of the damage and shutdown of the plant that resulted from the compressor failure. (*Id.*).

On January 16, 2012, an email was sent by Geissier to a large number of individuals that gave an update on the repair progress of the compressor. (Doc. 107-7 Ex. E at 1). The email stated that a RCFA (root cause failure analysis) was scheduled for January 24 by Mr. Scholbrock. (*Id.*). The email listed the upcoming steps planned in the repair process, including a finalized written repair plan, BASF personnel going to Seattle, and BASF personnel being present for reassembly of the compressor. (*Id.*). Lastly, the email stated that the restart of the plant would be in the last week of February, and that later in the week of the January 16th, the final repair costs would be submitted. (*Id.*).

On January 18, 2012, a letter was sent by certified mail from Tom Yura to Jody Doiron, General Manager of MAN. (Doc. 107-6 Ex. D at 1). This letter was sent to place MAN on official notice that BASF believed MAN to be liable for the damage to the compressor and

3

responsible for the resulting loss of profits stemming from the shutdown of the plant. (*Id.*). The letter stated that MAN personnel were present for all parts of the repair, subsequent failure, and disassembly of the compressor. (*Id.*). It confirmed that the compressor was being sent to Siemens for repair. (*Id.*). This letter also stated that it would take weeks to repair the compressor due to the unavailability of parts. (*Id.*).

On February 3, 2012, Peter Roth, President of MAN, responded to Yura's letter of January 18, 2012. (Doc. 107-8 Ex. F at 1). The letter requested a copy of Siemen's and BASF's files including: photographs, investigation reports, analysis, etc. (*Id.*). It also expressed desire to have a representative present for any future inspections or tests and be allowed to participate in the root cause analysis. (*Id.*). The letter stated MAN's intention to dispute any claim against it for negligent or improper work due to lack information provided and its lack of participation in any of the investigation related to the compressor. (*Id.*).

On February 13, 2012, Yura responded to Roth's letter of February 3, 2012. (Doc. 107-9 Ex. G at 1). Yura stated that he was troubled that Peter was suggesting that MAN was left out of the loop in regards to the compressor. (*Id.*). He stated that MAN personnel were present for the initial repair, the subsequent failure, and the disassembly of the compressor. (*Id.*). Tom stated that MAN knew that the compressor was being sent to Houston for repairs and consented. (*Id.*). Tom insisted that BASF had not prevented MAN from speaking to Siemens personnel or traveling to the Houston facility to conduct its own investigation. (*Id.*). He stated that BASF would provide MAN with copies of photographs related to the compressor along with invoices received in respect to the repair of that compressor. (*Id.*). He also stated that MAN would have permission to enter the BASF premises to observe the reinstallation of the compressor and perform its own inspection as long as it did not delay the startup. (*Id.*). However, Tom states that

4

MAN would not be allowed to question any BASF staff without approval; furthermore, MAN would not be allowed to participate in, or be privy to, any internal review or investigation conducted by BASF. (*Id.*).

### B.     Present Motion

BASF moves for summary judgement on MAN's claim of intentional spoliation of evidence.³ (Doc. 102; Doc. 102-1 at 5). BASF argues that MAN is required to establish that: (1) BASF intentionally destroyed the Compressor and (2) it was done with the intent to deprive MAN from using that evidence. (Doc. 102-1 at 1, 2, 4).  With MAN bearing the burden of proof for the claim, BASF claims it need only show that the record lacks the evidence necessary to prove the claim in order to satisfy its burden on summary judgement, thereby shifting the burden to MAN to present specific evidence that proves the above mentioned elements. (*Id.* at 2–3).

MAN argues two main points: BASF's motion is procedurally deficient and there are still remaining issues of fact that must be decided. (Doc. 107 at 4, 6). MAN argues that when a party seeks a claim of summary judgement, it must demonstrate that material facts are undisputed between the parties. (*Id.* at 4). It argues that because BASF has not demonstrated nor pointed to facts that are undisputed, then its motion should be denied. (*Id.* at 5). In the alternative, it argues that if the motion is not denied, that BASF be ordered to present a more definite statement of what specific facts are undisputed in order to justify granting a motion for summary judgement. (*Id.* at 6).

MAN argues in the further alternative that if the court finds that the motion is procedurally correct, there still remain contested issues of fact. (*Id.*). MAN acknowledges its

---

³ The Plaintiff's motion only targets for dismissal the intentional ***tort*** of spoliation. It does not address the alternative remedies that are available for the spoliation of evidence, such as a jury instruction, an adverse presumption, or other sanctions.

burden but insists that the facts it has presented show BASF's intentional and deliberate destruction of evidence. (*Id.* at 7). It argues that since BASF was contemplating liability on the part of MAN within a few days after the failure, it knew the importance of preserving the evidence. (*Id.* at 7–8). MAN claims BASF purposefully kept MAN from participating while still contemplating liability against it. (*Id.* at 8). MAN argues this purposeful exclusion differentiates this case from negligent spoliation where a low ranking employee destroys evidence. (*Id.* at 9). Lastly, MAN argues that even if it had been given the time to investigate the compressor, as it had already been under repair by the time its request was responded to, spoliation still occurred because MAN was forbidden to participate in the investigation of the cause of the failure. (*Id.*).

BASF responded to MAN's opposition restating its earlier argument that it is not required to identify and demonstrate an absence of evidence, but must only point to the record, pleadings, and evidence that it believes shows an absence of a genuine issue of material fact. (Doc. 109 at 1–3). It also argues that the motion does not ignore the court's order giving leave to MAN to file its First Supplemental and Amending Answer and Counterclaim. (*Id.* at 3). It argues since the motion has been made after discovery, it is appropriate. (*Id.*). It concludes by arguing that MAN has failed to bring forward anything more than mere allegations. (*Id.* at 4–5).

## II.   STANDARD TO BE APPLIED

### A.  Rule 56 Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with 'specific facts showing that

there is a genuine issue for trial.'" *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; *so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.*

*International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir.1991) (emphasis added).

### B.  Procedural Issues Related to the Rule 56 Standard

The parties disagree as to the proper standard that must be followed by the moving party in a motion of summary judgement. BASF argues that it must only show that the record demonstrates a lack of evidence on a material issue of fact; MAN argues that BASF must demonstrate with proof what material facts are lacking.

In *Celotex v. Catrett*, the district court granted summary judgement to Celotex Corp. because the defendant was unable to produce sufficient evidence to support allegations of wrongful-death related to asbestos exposure. 477 U.S. 317, 319 (1986). The appellate court reversed because the moving party failed to produce affidavits to support its motion tending to negate the exposure. *Id.* The Supreme Court stated that the plain language of Rule 56(c) mandates an entry of summary judgement when the party that bears the burden of proving the

elements of a claim fails to make a sufficient showing. *Id.* at 323. There is no genuine issue of material fact since there is a failure to prove the essential elements; therefore, effectively rendering the fact immaterial. *Id.* The moving party bears the initial responsibility to inform the court of the basis of its motion by identifying what portions of the record demonstrate the absence of genuine issue of material fact. *Id.*

The respondent in *Celotex* argued that because the petitioner had not supported its summary judgement with affidavits, it should be denied, but the Court stressed that a motion of summary judgment may be made with or without supporting affidavits when the burden of proof is not on the moving party. *Id.* at 324.

> But we do not think the *Adickes* language quoted above should be construed to mean that the burden is on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the nonmoving party bears the burden of proof. Instead, as we have explained, *the burden on the moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case*.

*Id.* at 325 (emphasis added).

The Court finds that MAN's proposed interpretation of mover's burden (Doc. 107, p. 4) is incorrect. This conclusion is further bolstered by the recognized right of a court to enter summary judgment *sua sponte*, without supporting affidavits, when the party against whom the judgment is rendered has failed to demonstrate a material issue of fact. *Id.* at 326. *Love v. Natl. Med. Enterprises*, 230 F.3d 765, 770–71 (5th Cir. 2000); *see also*, *Johnson v. Owens*, 612 F. App'x. 707, 718 (5th Cir. 2015) (unpublished), *cert. denied*, (U.S. 2015)

### III.   Spoliation

In a diversity case, state law (in this case, Louisiana law) controls the issue of spoliation of evidence. *Hodges v. Mosaic Fertilizer LLC*, 289 F. App'x. 4, 5 (5th Cir. 2008). "The theory of 'spoliation' of evidence refers to an *intentional* destruction of evidence for purpose of

depriving opposing parties of its use." *Clavier v. Our Lady of the Lake Hosp. Inc.*, 12-0560, at 4 (La. App. 1 Cir. 12/28/12), 112 So. 3d 881, 885, *writ denied*, 13-0264 (La. 3/15/13), 109 So. 3d 384 (emphasis added). Louisiana's Supreme Court has recently made clear that there is no cause of action for negligent spoliation. *Reynolds v. Bordelon*, 14-2362, at 1 (La. 6/30/15), 172 So. 3d 589, 592.[4] "Regardless of any alleged source of the duty, whether general or specific, public policy in our state precludes the existence of a duty to preserve evidence." *Id; see also Barthel v. State, Dep't of Transp. & Dev.*, 04-1619, at 7–8 (La. App. 1 Cir. 6/10/05), 917 So. 2d 15, 20.

*Intentional* spoliation of evidence means the destructions of evidence for the purpose of depriving opposing parties of its use. *Zurich American Ins., Co. v. Queen's Machinery Co., Ltd*, 08-546, at 9 (La. App. 5 Cir. 1/27/09), 8 So. 3d 91, 96.[5] "The tort of spoliation of evidence has its roots in the evidentiary doctrine of 'adverse presumption,' which allows a jury instruction for the presumption that the destroyed evidence contained information detrimental to the party who destroyed the evidence unless such destruction is adequately explained." *Id.* at 96–97.

**IV.   Analysis**

Here there is no dispute that MAN was deprived of the opportunity to have its representatives and/or experts participate in, view, photograph and otherwise document the

---

[4] The court in *Reynolds* ruled that a spoliation claim may exist in a breach of contract action. *Id.* at 8. However, MAN has not alleged the breach of a contractual duty not to spoliate.

[5] Neither party challenges whether *intentional* spoliation of evidence is a valid tort claim under Louisiana law. The Louisiana Supreme Court has not yet ruled on this issue. Prior to that court's rejection of negligent spoliation of evidence in *Reynolds*, 172 So. 3d at 592, the Western District held in *Union Pump Co. v. Centrifugal Technology, Inc.*, that "[i]t is this Court's *Erie* guess that the Louisiana Supreme Court would only recognize the tort of spoliation based on the intentional destruction of the evidence." No. 05-0287, 2009 WL 3015076, at *5 (W.D. La. Sept. 18, 2009); *see also Bertrand v. Fischer,* No. 09-0076, 2011 WL 6254091, at *2-3 (W.D. La. Dec. 14, 2011) ("agree[ing] with [*Union Pump*'s] analysis[.]"). The Court agrees with *Union Pump*'s "Erie guess" that the Louisiana Supreme Court would recognize the tort of spoliation based on the intentional destruction of the evidence.

inspection and analysis of equipment central to the issues in this case. In that very real sense evidence was destroyed by BASF. The question is whether that destruction was for the purpose of depriving MAN of the use of the evidence (i.e. was it "intentional" within the meaning of the spoliation cause of action), or was it done inadvertently or for some other innocent reason.

The facts in this case revealed through the various email exchanges, and reasonable inferences which can be drawn from those facts, give rise to different and competing answers to that question. Summary judgment in such a case is not appropriate. *Robertson v. Frank's Super Value Foods, Inc.*, 08-592, (La. App. 5 Cir. 1/13/09), 7 So.3d 669, 674 (summary judgment denied where question was motive for the destruction of evidence); s*ee also Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 604–09 (S.D. Texas 2010) (where former employee defendants were accused of intentional spoliation by deleting emails, the court found an adverse presumption and other sanctions appropriate because email evidence was destroyed).[6]

It is clear that, prior to the destruction of the evidence, BASF was contemplating suit against MAN for damages arising from the compressor's failure. Representatives discussed the possible need to place MAN on formal notice. BASF representatives discussed the need for a third party expert to act as a neutral observer in upcoming inspections and testing. While MAN assisted with packaging the compressor to send it to Houston, a reasonable juror could conclude

---

[6] Where, as here, the motivation of an actor is a key question and the facts give rise to competing plausible inferences, summary judgment is rarely appropriate. *E.g.*, *In re Dwight's Piano Co.*, 653 F. Supp. 2d 788, 796 (S.D. Ohio 2008) (where the court denied a motion for summary judgement because material, competing inferences required the credibility of witnesses to be weighted); *J&J Sports Productions, Inc. v. Bernabe*, No. 3:08-CV-00690(DJS), 2009 WL 2905781, at *1 (D. Conn. Sept. 8, 2009) (where the court held that it would be inappropriate on summary judgment to make any conclusions to a party's intent considering intent plays a central role in determining liability or damages); *Granison v. Hannon*, No. 1:05-CV-1247SEBVSS, 2006 WL 2228919, at *1 (S.D. Ind. Aug. 3, 2006) (summary judgement is not a procedure for resolving a swearing contest).

that it was merely helping its customer to mitigate the fallout, not waiving any right to inspect the compressor in a controlled environment with experts present.

Moreover, MAN would not have had the right to stop BASF from sending the compressor, so a reasonable juror could easily conclude MAN did not "consent" to inspection and testing in its absence. Even when it was sent to Siemens, the "third party," BASF made the decision to destroy the evidence, not Siemens. The inspection was performed at the discretion and direction of BASF with no input or independent analysis done by MAN or its representatives. In short, the facts are such that a reasonable juror could conclude that BASF's failure to formally notify and grant MAN the opportunity to participate was done for the purpose of depriving MAN of important evidence in the upcoming litigation being contemplated by BASF.

While BASF's position on the procedural aspects of its Motion for Summary Judgment is correct, with the facts being construed in a light most favorable to the MAN, a reasonable jury could conclude from reasonable inferences drawn from the facts in the record that BASF intentionally spoliated evidence.

V.     Conclusion

Accordingly, **IT IS ORDERED** that BASF Corporation's Motion for Summary Judgement on Spoliation of Evidence (Doc. 102) is hereby **DENIED**.

Signed in Baton Rouge, Louisiana, on November 5, 2015.

                                          **JUDGE JOHN W. deGRAVELLES**
                                          **UNITED STATES DISTRICT COURT**
                                          **MIDDLE DISTRICT OF LOUISIANA**